IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| MICHAEL BELDING, | ) |
| | ) |
| Plaintiff, | ) 2:23-CV-02148-MJH |
| | ) |
| vs. | ) |
| | ) |
| DAVID RUSSO, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ZACHARY SAMS, SUED IN HIS INDIVIDUAL CAPACITY; AND GREEN COUNTY, PENNSYLVANIA, | ) |
| | |
| Defendants, | |

## MEMORANDUM OPINION

On December 21, 2023, Plaintiff, Michael Belding, filed suit against Defendants, David Russo, former District Attorney for Greene County, Pennsylvania; Zachary Sams, former Chief Detective for Greene County; and Green County, itself. (ECF No. 1). Plaintiff brings nine counts, alleging violations of Plaintiff's rights under the First and Fourteenth Amendments. *Id.* On February 26, 2024, Defendant, Greene County, moved to dismiss Counts Eight and Nine of the Complaint. (ECF No. 12). Greene County further argues that paragraphs 12-22 of the Complaint should be stricken, citing F.R.C.P. 12(f). *Id.* On February 27, 2024, Defendant Russo filed a Motion to join in Greene County's motion and arguments related to paragraphs 12-22 and F.R.C.P. 12(f). (ECF No. 17). The issues have been fully briefed and are ripe for decision. For the reasons below, Greene County's Motion to Dismiss will be granted. Greene County and Mr. Russo's Motion to Strike paragraphs 12-22 of the Complaint, will be denied.

**I.   Statement of Facts**

1

In 2019, Plaintiff, Michael Belding, was elected to the Greene County Board of Commissioners ("the Board"). (ECF No. 1, at ¶ 25). On January 6, 2020, David Russo was sworn in as the District Attorney for Greene County. (*Id.* ¶ 28). Mr. Belding alleges that, from the beginning of his tenure, Mr. Russo conflicted with county elected officials and employees, refused to pursue Board-requested investigations, and maintained an unprofessional relationship with Greene County's Victim Witness Coordinator ("VWC"). (*Id.* ¶¶ 30-43).

In late October 2021, the VWC resigned her County position. (*Id.* ¶ 43). Following her resignation, the Board transferred oversight and management of the VWC position from the District Attorney's Office to the County Commissioners' Office. (*Id.* ¶ 45). The Board voted to appoint a member of their staff, Sarah Smith, to oversee the VWC program. (*Id.* ¶ 51). When asked why control of the VWC was being transferred, Mr. Belding told the press that the "transition was necessary because the District Attorney's Office had been unable to keep [the] important position adequately staffed." (*Id.* ¶ 54). Mr. Russo opposed Ms. Smith's appointment. Mr. Russo sent the Board various cease-and-desist letters, which were published by the media. Mr. Belding also alleges that, on January 26, 2022, Mr. Russo informed reporters that he was launching a criminal investigation into the alleged "illegal hiring" of Ms. Smith. (*Id.* ¶¶ 52-57). Mr. Belding alleges that Mr. Russo instructed Zachary Sams, his Chief Detective, to investigate Mr. Belding and the Board for the hiring of Ms. Smith. (*Id.* ¶¶ 58-60). Mr. Belding alleges that this investigation was conducted in retaliation for the public statements Mr. Belding made about the VWC position. (*Id.* ¶ 60).

In the Fall of 2022, Mr. Russo announced his intention to form a special weapons and tactics ("SWAT") unit under the Greene County District Attorney's Office. (*Id.* ¶ 72). On September 2, 2022, the Board requested that Mr. Russo explain the operation, organizational structure, and

2

procedures of the new SWAT unit. (*Id.* ¶ 73). Mr. Russo did not respond to such requests. (*Id.* ¶ 74). The Board sent two more letters to Mr. Russo, attempting to obtain a response and more information from Mr. Russo about the SWAT unit. Mr. Russo allegedly did not answer any of the Board's requests. (*Id.* ¶¶ 77-81). On January 3, 2023, an editorial opinion, criticizing Mr. Russo's implementation and creation of the SWAT unit, was authored by Mr. Belding and published in the Observer Reporter, a newspaper in Pittsburgh, Pennsylvania. (*Id.* ¶¶ 81-83). Mr. Belding claims that his editorial opinion statements were made as a citizen on a matter of public concern. (*Id.* ¶ 82).

Mr. Belding alleges that, two days after the Observer Reporter publication, Mr. Russo made statements to the press that two individuals were being charged with forging court orders, and that one of the accused individuals was a former employee of Mr. Belding. (*Id.* ¶¶ 85-86). Mr. Belding alleges that Mr. Russo continued commenting to the press, stating that six other individuals employed by Mr. Belding had been arrested for crimes. (*Id.* ¶ 87). Mr. Belding claims that none of the individuals identified by Mr. Russo ever worked for Mr. Belding. (*Id.* ¶ 89). In fact, under Greene County's organizational structure, no one works for a specific Commissioner, only the County itself. *Id.* Mr. Belding further alleges that Mr. Russo made these media statements in retaliation for Mr. Belding's published Observer Reporter editorial opinion. (*Id.* ¶ 90-91).

In 2022, Greene County's Office of the Controller audited the Greene County District Attorney's §§ 5801 and 5803(a) Forfeiture Accounts. (*Id.* ¶ 99). Mr. Belding alleges that the results of the audit revealed that Mr. Russo had improperly utilized funds to buy gear for his SWAT unit, and that, at least twice, Mr. Russo had violated the Asset Forfeiture Statute related to handling and accounting for asset forfeitures. (*Id.* ¶¶ 100-101). On September 30, 2022, the

Office of the Controller reported their findings to the Pennsylvania Office of the Attorney General. (*Id.* ¶ 101). On January 17, 2023, the chairman of the Greene County Republican committee filed a right-to-know request for the audit, which resulted in the release of several pages from the audit. (*Id.* ¶ 103). On February 18, 2023, Mr. Belding posted portions of the audit on his personal Facebook page. (*Id.* ¶ 104). On March 2, 2023, Detective Sams sent a "Preservation Request" to the Green County Information Technology Director, instructing them to preserve certain emails and other electronic communications. The request indicated that such preservation related to the release of confidential information. (*Id.* ¶ 105).

Mr. Belding claims that Greene County officials considered the preservation demand to be an investigation into the release of the County's audit of the Office of the District Attorney, and that Mr. Russo directed Detective Sams to begin said investigation. (*Id.* ¶¶ 107-108). On March 7, 2023, County Soliciter, Eugene Grimm, filed an action for declaratory judgment related to the investigation against County officials, asserting the investigation was politically motivated and a conflict of interest. (*Id.* ¶ 110). Mr. Belding signed the Verification for the Declaratory Action. *Id.* ¶ 111. On March 11, 2023, Mr. Russo issued a written statement to the media stating:

> To say I am furious beyond measure with Mike Belding and his cronies' fabricated allegations would be an understatement. . . . Belding has surreptitiously and libelously used sensitive government documents in order to attempt to slander my name. . . . Belding and his cronies can be sure that this will be answered aggressively and swiftly and lawsuits will be filed against Belding regarding his action and behavior.

(*Id.* ¶ 112).

On March 15, 2023, Greene County's Office of Registration and Elections conducted a casting-of-lots to determine the order for listing candidates on the election ballot for the county election. (*Id.* ¶ 113). This casting-of-lots was not properly advertised in two newspapers, as

4

required by 25 Pa. Stat. § 2875, which resulted in a challenge to the original casting-of-lots. (*Id.* ¶ 114). A recasting of the lots was rescheduled for March 23, 2023. (*Id.* ¶ 116). Mr. Russo, who was seeking reelection to the Office of District Attorney, objected to the recasting of the lots; and he, along with some other candidates, refused to recast their lots. (*Id.* ¶¶ 119-120). The Green County Elections Manager informed the candidates that anyone who refused to cast a lot would be positioned last on the primary ballot. (*Id.* ¶ 121). Mr. Russo and several others, who still refused to recast their ballots, were positioned at the bottom of the ballot. (*Id.* ¶ 112). Mr. Belding alleges that he was not involved with the decision to place those, refusing to recast their lots, at the bottom of the ballot. (*Id.* ¶ 123).

On April 4, 2023, Detective Sams filed a criminal complaint and affidavit of probable cause against Mr. Belding related to the recasting of lots, accusing Mr. Belding in four criminal counts. (*Id.* ¶ 124). Mr. Belding alleges that Mr. Russo "directed, advised, and assisted [Detective] Sams on the investigation and coordinated with [Detective] Sams to file charges against Mr. Belding." (*Id.* ¶ 126). Mr. Belding alleges that Mr. Russo was the actual author of the affidavit in support of the criminal complaint and that Mr. Sams just signed off on what was written. (*Id.* ¶ 129). Since Mr. Russo was a candidate in the election that was being challenged, the charges were referred to the Pennsylvania Attorney General's Office. (*Id.* ¶ 142). On May 2, 2023, the Pennsylvania Attorney General's Office withdrew all four of the charges against Mr. Belding, "finding that the criminal complaint was not supported by probable cause." (*Id.* ¶ 144).

## II.     Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

5

the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The

6

purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### III. Discussion

#### A. First and Fourteenth Amendment Claims against Greene County

In Counts Eight and Nine of his Complaint, Mr. Belding claims that Greene County violated his rights under the First and Fourteenth Amendments. Specifically, Mr. Belding alleges that Mr. Russo took retaliatory actions in response to Mr. Belding's public speech, and that Mr. Russo pursued a policy of selective enforcement of the law. (ECF No. 1, at ¶¶ 263-300). Mr. Belding argues that the County acquiesced in and ratified Mr. Russo's actions. *Id.* The County argues that Mr. Russo was not a final policy maker for the County, because all of Mr. Russo's alleged conduct was made in his prosecutorial capacity; and therefore, the County cannot be held liable for his actions. (ECF No. 13, at 5-9). Mr. Belding argues that all of Mr. Russo's conduct was non-prosecutorial and not subject to absolute immunity. (ECF No. 23, at 10) Mr. Belding also contends that the County adopted and ratified a retaliatory policy by permitting Mr. Russo and Mr. Sams to repeatedly, and without consequence, retaliate against Mr. Belding. (*Id*).  Mr. Belding further argues that the County was complicit in Mr. Russo and Sams alleged selective enforcement of the laws against him. (*Id.* at 16).

    *i.*    *Prosecutorial Immunity*

Before the Court can determine whether the County can be held liable for any of Mr. Russo's actions, we must first determine if any of these actions are protected by prosecutorial absolute immunity, given Mr. Russo's position as the District Attorney of Greene County.

Prosecutors are afforded prosecutorial absolute immunity from § 1983 claims for conduct that serves a "quasi-judicial function." *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024). To qualify as a quasi-judicial function, conduct must be "intimately associated with the judicial phase of the criminal process" or an analogous judicial proceeding. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial absolute immunity does not shield district attorneys from "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (citing *Weimer v. County of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020)).

Assessing whether a prosecutor is afforded prosecutorial absolute immunity involves "two basic steps, though they tend to overlap." *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (quoting *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011)). "First, we 'ascertain just what conduct forms the basis for the plaintiff's cause of action.' Then, we 'determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served ....'" *Roberts*, 90 F. 4th at 625 (quoting *Schneyder*, 653 F.3d at 332). "To earn the protections of absolute immunity at the motion-to-dismiss stage, a [prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." *Weimer*, 972 F.3d at 187 (cleaned up) (quoting *Fogle*, 957 F.3d at 161).

Determining the function of a prosecutor's conduct is a fact-specific analysis. For instance, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Fogle*, 957 F.3d 148 at 160 (quoting *Buckley v.*

8

*Fitzsimmons*, 509 U.S. 259, 274 (1993)). Before development of probable cause for an arrest, a prosecutor's "mission at that time [i]s entirely investigative in character." *Id.* "Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, ... a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* (quoting *Buckley*, 509 U.S. at 274 n.5). "It follows that when prosecutors function as investigators, rather than advocates, they enjoy no right to [prosecutorial] absolute immunity." *Id.* (citing *Buckley*, 509 U.S. at 275–76); *see also Burns v. Reed*, 500 U.S. 478, 495 (1991) (observing that prosecutorial absolute immunity is not so "expansive" as to protect all "direct participation in purely investigative activity"); *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (declining to extend prosecutorial absolute immunity where a prosecutor makes a false statement of fact in an affidavit supporting an arrest warrant).

Under the above test, the Court must individually assess each of Mr. Russo's alleged actions as set forth within the complaint, and determine if any of said actions had a prosecutorial function. Mr. Russo's alleged conduct can be separated into three categories, (1) his various media comments and statements related to Mr. Belding; (2) his alleged pretextual investigations against Mr. Belding; and (3) the criminal complaint filed against Mr. Belding, upon the alleged direction from Mr. Russo.

As regard Mr. Russo's alleged media comments, about Mr. Belding, his first comments occurred after the Board took control of the VWC position and employed Ms. Smith. (ECF No. 1, at ¶ 54). Mr. Belding alleges that Mr. Russo informed the press that an investigation was being initiated against Mr. Belding and the other Commissioners related to the hiring of Ms. Smith, and that Mr. Russo "threatened possible charges." (*Id.* ¶¶ 55-57). Next, Mr. Belding alleges that Mr.

9

Russo told the media that he was bringing charges against two individuals, one of whom used to work for Mr. Belding, for forging court orders. (*Id.* ¶¶ 85-86). Mr. Russo allegedly also told the media that the charged individual was the seventh employee of Mr. Belding who had been arrested for crimes. (*Id.* ¶ 87). Mr. Belding pleads that all of Mr. Russo's statements were false. (*Id* ¶ 88). Finally, Mr. Belding alleges that, after his Facebook posts of portions of the Greene County Controller's audit report from the District Attorney's office, Mr. Russo began an investigation against County officials. (*Id.* ¶ 110). On March 11, 2023, Mr. Russo released a written media statement, wherein he threatened legal action. (*Id.* ¶ 112). As the Third Circuit has held, "communication with the press is not core prosecutorial activity." *Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992). Thus, Mr. Russo's alleged media comments are not prosecutorial in function and prosecutorial absolute immunity does not apply.

Next, turning to Mr. Sams' alleged investigations of Mr. Belding, as directed by Mr. Russo, Mr. Belding alleges that these investigations were in retaliation for Mr. Belding's media comments. The alleged investigations included (1) the investigation after the Board of County Commissioners took control of the VWC and after Mr. Belding's media comments (ECF No 1, at ¶¶ 55-60); (2) the investigation against the Board and Mr. Belding after Mr. Belding's Facebook posts with portions of the audit report of the District Attorney's Office (*Id.* ¶¶ 105-09); and (3) the investigation against Mr. Belding over the recasting of the lots for ballot position. (*Id.* ¶¶ 124-41). These alleged investigations are investigatory in function. They were in furtherance of obtaining probable cause for possible criminal charges; therefore, such actions were investigatory in nature. *See Fogle*, 957 F.3d 148. Mr. Russo's actions related to these investigations were not prosecutorial in function and prosecutorial absolute immunity does not apply.

10

Finally, as regards the criminal complaint and accompanying affidavit related to the recasting of the lots. Mr. Belding alleges that Mr. Russo directed, advised, and assisted Sams on the investigation and filing of criminal charges against Mr. Belding. (ECF No. 1, at ¶ 126). Mr. Belding further alleged that Mr. Russo drafted the affidavit in support of the criminal complaint and that Mr. Sams simply signed on to what was written. The criminal charges are prosecutorial in function. Prosecuting criminal charges that are brought against individuals is the core function of a district attorney, such as Mr. Russo. Thus, the criminal complaint against Mr. Belding, was a prosecutorial function, and prosecutorial absolute immunity applies.

ii.     *Application of Monell*

Having established that Mr. Russo's media comments and his alleged pretextual investigations against Mr. Belding are not protected by prosecutorial absolute immunity, the Court must now assess whether Mr. Belding has pleaded sufficient facts to state a claim against the County itself.

To prevail on a § 1983 claim against a municipality, a plaintiff must plead and prove (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *Burgos v. City of Phila.* 270 F. Supp. 3d 788, 796 (2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). A "policy" is made, "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A "custom" is present when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

11

Mr. Belding fails to plead facts sufficient to establish that Mr. Russo's non-prosecutorial actions established a policy or custom attributable to the County for the purposes of *Monell* liability. The only facts that Mr. Belding alleges to implicate the County are that the County, "adopted and enforced a policy or custom of selectively enforcing laws against Russo's critics," and that the County "ratified [a] discriminatory policy by permitting Russo and Sams to repeatedly pursue unfounded criminal charges against Russo's perceived enemies." (ECF No. 1, at ¶ 286, 299). These allegations are conclusory. Mr. Belding pleads no facts to allege how the County adopted or acquiesced in Mr. Russo's actions or that he was following a County policy or custom. In fact, much of the Complaint alleges facts that describe the Board of County Commissioners' and Mr. Belding's continuing resistance to Mr. Russo's objectionable actions. As alleged in the Complaint, Mr. Belding and other county officials were constantly attempting to deter Mr. Russo's objectionable actions. Mr. Belding fails to plead facts sufficient to establish, under *Monell*, that Mr. Russo's non-prosecutorial actions can be attributable to the County. Accordingly, Defendant Greene County's Motion to Dismiss Counts Eight and Nine of the Complaint will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Belding will be given leave to amend Count Eight and Nine of the Complaint.

**B. Facts Contained in Paragraphs 12-22 of the Complaint.**

The County, joined by Mr. Russo, requests that the Court strike paragraphs 12-22 of Mr. Belding's Complaint. The County and Mr. Russo argue that the allegations as contained in those paragraphs, are immaterial and serve no purpose to advance Mr. Belding's claims. (ECF No. 13, at 9); (ECF No. 17). Mr. Belding argues that said paragraphs provide only background information about Mr. Belding. (ECF No. 23, at 18). Mr. Belding further argues that the alleged

facts in said paragraphs contain typical information that is more appropriately disclosed during discovery. *Id.*

Federal Rule of Civil Procedure 12(f) provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. F.R.C.P. 12(f). The Court finds that paragraphs 12-22 of the Complaint do not contain redundant, impertinent, or scandalous information. Paragraphs 12-22 are sufficiently related to this action; they are not unduly prejudicial or scandalous to Greene County or to Mr. Russo. Greene County and Mr. Russo's Motion to Strike paragraphs 12-22 of the Complaint will be denied.

### C. Punitive Damages

In his Complaint, Mr. Belding seeks punitive damages against Greene County. (ECF No. 1, at Prayer for Relief). On February 20, 2024, the parties, Mr. Belding and Greene County, filed a Stipulation, agreeing that Mr. Belding's claims for punitive damages against Greene County were withdrawn with prejudice. (ECF No. 11). Pursuant to this Stipulation, and the relevant law, Mr. Belding's claims for punitive damages against Greene County, will be dismissed, without leave to amend.

### IV.   Conclusion

For the reasons stated above, Greene County's Motion to Dismiss will be granted. Counts Eight and Nine of the Complaint, will be dismissed, with leave to amend. Greene County and Mr. Russo's Motion to Strike paragraphs 12-22 of the Complaint, will be denied. Mr. Belding will have until August 16, 2024 to file an amended complaint. A separate order to follow.

DATE: 8/2/2024\_\_\_

Marilyn J. Horan
United States District Judge