IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| MICHAEL BELDING, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-02148-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID RUSSO, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ZACHARY SAMS, SUED IN HIS INDIVIDUAL CAPACITY; AND GREEN COUNTY, PENNSYLVANIA, | ) | |
| | ) | |
| Defendants, | | |

## MEMORANDUM OPINION

On December 21, 2023, Plaintiff, Michael Belding, filed suit against Defendants, David Russo, former District Attorney for Greene County, Pennsylvania; Zachary Sams, former Chief Detective for Greene County; and Green County, itself. (ECF No. 1). On February 26, 2024, Defendant, Greene County, moved to dismiss Counts Eight and Nine of the Complaint. (ECF No. 12). On August 2, 2024, this Court granted Defendant Greene County's Motion to Dismiss. (ECF No. 29). On August 16, 2024, Plaintiff filed a ten count Amended Complaint, alleging violations of his rights under the First and Fourteenth Amendment. (ECF No. 32). On August 30, 2024, Defendant Greene County filed its Motion to Dismiss all claims and counts against it, (ECF No. 33), and an accompanying brief. (ECF No. 34). On September 13, 2024, Plaintiff filed his Brief in Opposition to Defendant Greene County's Motion to Dismiss. (ECF No. 38). Greene County did not file a Reply. All issues have been briefed and are ripe for decision. For the reasons below, Greene County's Motion to Dismiss will be denied.

1

I.      **Statement of Facts**

In 2019, Plaintiff, Michael Belding, was elected to the Greene County Board of Commissioners ("the Board"). (ECF No. 32, at ¶ 25). On January 6, 2020, David Russo was sworn in as the District Attorney for Greene County. (*Id.* ¶ 28). Mr. Belding alleges that, from the beginning of his tenure, Mr. Russo conflicted with county elected officials and employees, refused to pursue Board-requested investigations, and maintained an unprofessional relationship with Greene County's Victim Witness Coordinator ("VWC"). (*Id.* ¶¶ 30-43).

In late October 2021, the VWC resigned her County position. (*Id.* ¶ 43). Following her resignation, the Board transferred oversight and management of the VWC position from the District Attorney's Office to the County Commissioners' Office. (*Id.* ¶ 45). The Board voted to appoint a member of their staff, Sarah Smith, to oversee the VWC program. (*Id.* ¶ 51). When asked why control of the VWC was being transferred, Mr. Belding told the press that the "transition was necessary because the District Attorney's Office had been unable to keep [the] important position adequately staffed." (*Id.* ¶ 54). Mr. Russo opposed Ms. Smith's appointment. Mr. Russo sent the Board various cease-and-desist letters, which were published by the media. Mr. Belding also alleges that, on January 26, 2022, Mr. Russo informed reporters that he was launching a criminal investigation into the alleged "illegal hiring" of Ms. Smith. (*Id.* ¶¶ 52-57). Mr. Belding alleges that Mr. Russo instructed Zachary Sams, his Chief Detective, to investigate Mr. Belding and the Board for the hiring of Ms. Smith. (*Id.* ¶¶ 58-60). Mr. Belding alleges that this investigation was conducted in retaliation for the public statements Mr. Belding made about the VWC position. (*Id.* ¶ 60).

In the Fall of 2022, Mr. Russo announced his intention to form a special weapons and tactics ("SWAT") unit under the Greene County District Attorney's Office. (*Id.* ¶ 72). On September 2,

2022, the Board requested that Mr. Russo explain the operation, organizational structure, and procedures of the new SWAT unit. (*Id.* ¶ 73). Mr. Russo did not respond to such requests. (*Id.* ¶ 74). The Board sent two more letters to Mr. Russo, attempting to obtain a response and more information from Mr. Russo about the SWAT unit. Mr. Russo allegedly did not answer any of the Board's requests. (*Id.* ¶¶ 77-81). On January 3, 2023, an editorial opinion, criticizing Mr. Russo's implementation and creation of the SWAT unit, was authored by Mr. Belding and published in the Observer Reporter, a newspaper in Pittsburgh, Pennsylvania. (*Id.* ¶¶ 81-83). Mr. Belding claims that his editorial opinion statements were made as a citizen on a matter of public concern. (*Id.* ¶ 82).

Mr. Belding alleges that, two days after the Observer Reporter publication, Mr. Russo made statements to the press that two individuals were being charged with forging court orders, and that one of the accused individuals was a former employee of Mr. Belding. (*Id.* ¶¶ 85-86). Mr. Belding alleges that Mr. Russo continued commenting to the press, stating that six other individuals employed by Mr. Belding had been arrested for crimes. (*Id.* ¶ 87). Mr. Belding claims that none of the individuals identified by Mr. Russo ever worked for Mr. Belding. (*Id.* ¶ 89). In fact, under Greene County's organizational structure, no one works for a specific Commissioner, only the County itself. (*Id.*). Mr. Belding further alleges that Mr. Russo made these media statements in retaliation for Mr. Belding's published Observer Reporter editorial opinion. (*Id.* ¶ 90-91).

In 2022, Greene County's Office of the Controller audited the Greene County District Attorney's §§ 5801 and 5803(a) Forfeiture Accounts. (*Id.* ¶ 99). Mr. Belding alleges that the results of the audit revealed that Mr. Russo had improperly utilized funds to buy gear for his SWAT unit, and that, at least twice, Mr. Russo had violated the Asset Forfeiture Statute related

3

to handling and accounting for asset forfeitures. (*Id.* ¶¶ 100-101). On September 30, 2022, the Office of the Controller reported their findings to the Pennsylvania Office of the Attorney General. (*Id.* ¶ 101). On January 17, 2023, the chairman of the Greene County Republican committee filed a right-to-know request for the audit, which resulted in the release of several pages from the audit. (*Id.* ¶ 103). On February 18, 2023, Mr. Belding posted portions of the audit on his personal Facebook page. (*Id.* ¶ 104). On March 2, 2023, Detective Sams sent a "Preservation Request" to the Green County Information Technology Director, instructing them to preserve certain emails and other electronic communications. The request indicated that such preservation related to the release of confidential information. (*Id.* ¶ 105).

Mr. Belding claims that Greene County officials considered the preservation demand to be an investigation into the release of the County's audit of the Office of the District Attorney, and that Mr. Russo directed Detective Sams to begin said investigation. (*Id.* ¶¶ 107-108). On March 7, 2023, County Solicitor, Eugene Grimm, filed an action for declaratory judgment related to the investigation against County officials, asserting the investigation was politically motivated and a conflict of interest. (*Id.* ¶ 110). Mr. Belding signed the Verification for the Declaratory Judgment Action. *Id.* ¶ 111. On March 11, 2023, Mr. Russo issued a written statement to the media stating:

> To say I am furious beyond measure with Mike Belding and his cronies' fabricated allegations would be an understatement. . . . Belding has surreptitiously and libelously used sensitive government documents in order to attempt to slander my name. . . . Belding and his cronies can be sure that this will be answered aggressively and swiftly and lawsuits will be filed against Belding regarding his action and behavior.

(*Id.* ¶ 112).

On March 15, 2023, Greene County's Office of Registration and Elections conducted a casting-of-lots to determine the order for listing candidates on the election ballot for the county

election. (*Id.* ¶ 113). This casting-of-lots was not properly advertised in two newspapers, as required by 25 Pa. Stat. § 2875, which resulted in a challenge to the original casting-of-lots. (*Id.* ¶ 114). A recasting of the lots was rescheduled for March 23, 2023. (*Id.* ¶ 116). Mr. Russo, who was seeking reelection to the Office of District Attorney, objected to the recasting of the lots; and he, along with some other candidates, refused to recast their lots. (*Id.* ¶¶ 119-120). The Green County Elections Manager informed the candidates that anyone who refused to cast a lot would be positioned last on the primary ballot. (*Id.* ¶ 121). Mr. Russo and several others, who still refused to recast their ballots, were positioned at the bottom of the ballot. (*Id.* ¶ 112). Mr. Belding alleges that he was not involved with the decision to place those, who refused to recast their lots, at the bottom of the ballot. (*Id.* ¶ 123).

On April 4, 2023, Detective Sams filed a criminal complaint and affidavit of probable cause against Mr. Belding related to the recasting of lots, accusing Mr. Belding in four criminal counts. (*Id.* ¶ 124). Mr. Belding alleges that Mr. Russo "directed, advised, and assisted [Detective] Sams on the investigation and coordinated with [Detective] Sams to file charges against Mr. Belding." (*Id.* ¶ 126). Mr. Belding alleges that Mr. Russo was the actual author of the affidavit in support of the criminal complaint and that Mr. Sams just signed off on what was written. (*Id.* ¶ 129). Since Mr. Russo was a candidate in the election that was being challenged, the charges were referred to the Pennsylvania Attorney General's Office. (*Id.* ¶ 142). On May 2, 2023, the Pennsylvania Attorney General's Office withdrew all four of the charges against Mr. Belding, "finding that the criminal complaint was not supported by probable cause." (*Id.* ¶ 144).

Mr. Belding alleges that Greene County policymakers were aware of Mr. Russo and Mr. Sams' unconstitutional conduct against Mr. Belding and others but did not take any precautions against the behavior. (*Id.* ¶¶ 156-157). Mr. Belding alleges that "16 Pa. Stat. § 1405(b) sets forth

5

a mechanism for initiating the removal of a district attorney for willful and gross negligence in the execution of the duties of the office, which includes engaging in unconstitutional behavior; however, Greene County's policymakers did not pursue this precautionary measure until after the unconstitutional conduct and attendant harm described herein had occurred. (*Id.* ¶ 158). Mr. Belding further alleges that Green County policy makers did not initiate any policies, practices, or intervening conduct to stop Mr. Russo and Sams' conduct. (*Id.* ¶¶ 159-163).

## II.     Relevant Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A

pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### III. Discussion

A. First Amendment Retaliation Claims

In Counts Eight and Nine of his Second Amended Complaint, Mr. Belding claims that Greene County and the Greene County District Attorney's Office violated his rights under the First Amendment by taking retaliatory actions in response to Mr. Belding's public speech. (ECF No. 32, at ¶¶ 273-312). Mr. Belding alleges that Mr. Russo "(1) used the media to threaten legal

action against and make false and disparaging statements about Mr. Belding; and (2) initiated and participated in pretextual criminal investigations against Mr. Belding."[1] (ECF No. 38, at 16). Mr. Belding alleges that such retaliatory actions taken by Mr. Russo were a policy and custom of Greene County. (ECF No. 32, at ¶¶ 273-312).

Greene County argues that Mr. Belding's speech was not constitutionally protected. (ECF No. 34, at 5-7). Greene County further argues that Mr. Belding has not pled facts to establish that the County disregarded a known or obvious consequence of its actions such that its actions or lack thereof amount to deliberate indifference to Mr. Belding's constitutional rights. (*Id.*). Greene County further contends that Mr. Belding fails to establish that Mr. Russo's non-prosecutorial actions established a policy or custom attributable to the County to impose *Monell* liability, and that Mr. Russo was not acting as a final policy maker of the County when he took the non-prosecutorial actions. (*Id.*).

Mr. Belding maintains that Greene County's argument, that Mr. Belding's speech was not constitutionally protected, is precluded, because the present allegations regarding Mr. Belding's statements are unchanged and Greene County did not make the argument when it filed the first Motion to Dismiss in this case. (ECF No. 38, at 10-11). Mr. Belding argues that he has pled facts sufficient to establish that Mr. Russo was acting as a final policy maker when he took the alleged non-prosecutorial retaliatory acts. (ECF No. 38, at 13). Mr. Belding further argues that he has sufficiently alleged that Mr. Russo's actions created a policy of retaliation, for which Greene County's acquiescence, constituted a custom of retaliation. (*Id.* at 15-21).

---

[1] In this Court's August 2, 2024 Memorandum Opinion, this Court determined that these alleged actions taken by Mr. Russo were the only actions not protected by prosecutorial immunity.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court established circumstances for when a municipality can be held liable under § 1983. To prevail on a § 1983 claim against a municipality, a plaintiff must plead and prove (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *Burgos v. City of Phila.* 270 F. Supp. 3d 788, 796 (2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). A "policy" is made, "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A "custom" is present when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "Custom stems from policymakers' 'acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity.'" *Wright v. City of Philadelphia*, 685, F. App'x 142, 147 (3d Cir. 2017) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Further, even a single act or event can subject an entity to *Monell* liability. In *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), the Supreme Court held that

> It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body — whether or not that body had taken similar action in the past or intended to do so in the future — because even a single decision by such a body unquestionably constitutes an act of official government policy.

475 U.S. at 480. For a single act to subject an entity to *Monell* liability, the plaintiff must establish that the official, whose decision or conduct is in question, had final policy making authority for the governmental entity regarding the specific manner at hand. *Id.*

To prove that an individual acted with final policy-making authority, a plaintiff must show that (1) as a matter of state law, the official is responsible for making policy in the areas of municipal action in question, *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997), and (2) the official's authority to make policy in that area is unreviewable. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Municipal policy may be granted directly by a legislative enactment or delegated by an official who possesses such authority. *Pembaur*, 475 U.S. at 483. Whether an official possesses such authority is dictated by state law. *Id.* Municipal liability under § 1983 attaches when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* When discussing the application of absolute immunity to district attorneys, the Third Circuit recognized that, under Pennsylvania Law, district attorneys are the "'chief law enforcement officer[s] for the county in which [they were] elected.'" *Carter v. City of Phila.*, 181 F.3d 339, 349.

As an initial matter, the Court will address Greene County's argument that Mr. Belding's speech was not constitutionally protected. According to Federal Rule of Civil Procedure 12(g)(2) "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Such limitations exist even when a complaint has been amended. *See Gary v. Hladik Onorato & Federman, LLP*, 509 F. Supp. 3d 368, 374. (W.D. Pa. 2020). Here,

Greene County's argument, that Mr. Belding's speech was not protected speech, relates to allegations that were made in Mr. Belding's original complaint and those are unchanged in his Amended Complaint. *See* (ECF No. 1, at ¶¶ 54, 81-83, 95-97, 103-04, 111); *See also* (ECF No. 32, at ¶¶ 54, 81-83, 95-97, 103-04, 111). Greene County had the opportunity to argue that Mr. Belding's speech was not protected in its original Motion to Dismiss, but failed to do so. Since Mr. Belding's allegations, regarding his speech, remain unchanged in his Amended Complaint, Greene County's argument that such speech is unprotected, will not be considered at this stage. However, even if Greene County's argument were to be considered, at this stage, the Amended Complaint alleges sufficient facts to support that Mr. Belding's speech in question could be considered protected speech.

As for Greene County's argument, that Mr. Belding cannot establish *Monell* liability for Mr. Russo's non-prosecutorial actions, such argument falls short. Mr. Belding has alleged sufficient facts, at this stage, to establish that it is plausible that, because Mr. Russo allegedly engaged in a custom or policy that violated Mr. Belding's First Amendment rights, Greene County may be liable to Mr. Belding. Greene County argues that *Monell* liability applies only to truly administrative actions made by a district attorney, such as the training and supervision of employees under a district attorney's discretion. (ECF No. 34, at 12). The law does not support such a restrictive interpretation. The Third Circuit, in *Carter*, determined that, when a district attorney performs actions outside of his prosecutorial function, he acts as a final policy maker of the county where he was elected. 181 F.3d at 352-353. While the Third Circuit was speaking about the application of prosecutorial immunity, in its decision, the court's discussion is informative as to the question of when a district attorney may be considered to be a policy maker of the County. There are functions attendant to the district attorney's position that are more than

administrative, but less than prosecutorial, which do not qualify for absolute immunity, and the district attorney is thus acting as a policy maker for the county. These functions involve prosecutorial discretion and include investigations and comments to the public. *See Fogle v. Sokol*, 957 F. 3s 148, 160 (3d Cir. 2020)("when prosecutors function as investigators, rather than advocates, they enjoy no right to absolute immunity"); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 277-278 (1993) (holding that district attorneys' media comments are not afforded prosecutorial immunity); *Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir. 1989) (holding that media comments made by a prosecutor are an administrative function of a prosecutor). Accordingly, Mr. Belding's allegations support that Mr. Russo's initiation of and participation in Mr Sams' investigations of Mr. Belding and Mr. Russo's media comments about Mr. Belding were made in his capacity as a policy maker for Greene County. Thus, taking Mr. Belding's allegations as true, as the Court must at this stage, Mr. Belding has alleged facts sufficient to establish that Greene County may be held liable under *Monell*. As such, Greene County's Motion to Dismiss Mr. Belding's First Amendment retaliation claims, at Counts Eight and Nine of the Amended Complaint, will be denied.

B. Selective Enforcement Claim

At Count Ten of the Amended Complaint, Mr. Belding brings a selective enforcement claim against Greene County and the District Attorney's Office. (ECF No. 32, at ¶¶ 313-337). Greene County argues that, because this Court determined that Mr. Russo's prosecution of Mr. Belding is protected by prosecutorial immunity, Greene County cannot be subject to *Monell* liability based upon that prosecution. (ECF No. 34, at 13). Mr. Belding argues that Count Ten is a claim for selective enforcement by Mr. Sams; and, as such, it is subject to a different standard from selective prosecution. (ECF No. 38, at 21-23). Mr. Belding further argues that he has alleged

sufficient facts to establish that Greene County acquiesced in Mr. Russo and Mr. Sams' selective enforcement of the laws against Mr. Belding, such that *Monell* liability applies. (*Id.*).

Selective prosecution and selective enforcement are distinct claims that concern discrete actors and conduct. *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) ("[T]he enforcement/prosecution distinction is a legitimate one."). Claims of selective prosecution concern the prosecutorial actions of a prosecutor, which implicates doctrines such as prosecutorial immunity. *Id.* at 214, 219. Selective enforcement, on the other hand, concerns the actions of law enforcement officials, who "enjoy no such categorical protection." *Id.* Selective enforcement occurs when an individual or individuals are treated differently from other similarly situated individuals, based upon an unjustifiable standard, such as to punish them for exercising constitutional rights. *See Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 631 (D.N.J. 2013); *See also Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993) ("Public officials engage in unconstitutional discriminatory application or administration of a facially impartial law when they seek to enforce the law . . . in order to prevent the exercise of a fundamental right."

Here, Greene County fails to provide any argument regarding Mr. Belding's selective enforcement claim. Greene County's argument focuses on selective prosecution in relation to Mr. Russo's actions. (ECF No. 34, at 13). However, Mr. Belding alleges that Mr. Sams, under the instruction of Mr. Russo, pursued criminal charges against Mr. Belding, because Mr. Belding spoke out against Mr. Russo and that such charges were not pursued against similarly situated individuals. (ECF No. 32, at ¶¶ 317-323). Mr. Belding also alleges that Mr. Sams selectively enforced laws against other critics of Mr. Russo, and that Greene County was aware of such selective enforcement and acquiesced such actions. (*Id.* ¶¶ 324-329). Mr. Belding further argues that Greene County took no actions against the alleged selective enforcement against him. (*Id.* ¶¶

332-35). For the reasons discussed above, Mr. Belding sufficiently pled facts to satisfy the pleading request to show that Mr. Russo is a policy maker for Greene County. Since Mr. Belding alleges that Mr. Russo directed Mr. Sams to selectively enforce the law against him, Greene County may be liable under *Monell*. Taking Mr. Belding's allegations as true, as the Court must at this stage of the proceedings, Mr. Belding has pled sufficient facts to allege a selective enforcement claim against Greene County. As such, Greene County's Motion to Dismiss Mr. Belding's selective enforcement claim against it, at Count Ten of the Amended Complaint, will be denied.

## IV.   Conclusion

For the reasons above, Greene County's Motion to Dismiss Mr. Belding's First Amendment retaliation claims, at Counts Eight and Nine of the Amended Complaint, will be denied. Greene County's Motion to Dismiss Mr. Belding's selective enforcement claims, at Count Ten of the Amended Complaint, will also be denied.

DATE: April 15, 2025

Marilyn J. Horan
United States District Judge